**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMIE CRAWFORD,

                           Petitioner,

    v.                                          No. 04-CV-473
                                                    (GLS/DRH)

JOHN BURGE, Superintendent,

                           Respondent.

---

**APPEARANCES:**                                **OF COUNSEL:**

JAMIE CRAWFORD
Petitioner Pro Se
No. 99-B-2428
Auburn Correctional Facility
Post Office Box 618
135 State Street
Auburn, New York 13021

HON. ELIOT SPITZER                              PATRICK F. MacRAE, ESQ.
Attorney General for the                        Assistant Attorney General
  State of New York
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

      Petitioner pro se Jamie Crawford ("Crawford") is currently an inmate in the custody of the New York State Department of Corrections (DOCS) at Auburn Correctional Facility. Crawford was found guilty on June 11, 1999 after a jury trial in Onondaga County Supreme Court of criminal possession of a controlled substance in the first and third degrees and

---

      [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) (Supp. 2004) and N.D.N.Y.L.R. 72.4.

criminally using drug paraphernalia in the second degree.  Crawford was sentenced to a total indeterminate term of twenty years to life imprisonment and is currently serving that sentence.  Crawford now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on three grounds:

(1) his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure;

(2) his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest; and

(3) he did not receive the effective assistance of counsel.

For the following reasons, it is recommended that Crawford's petition be denied.

## I. Background

On December 1, 1998 at 2:53 p.m., the Syracuse Fire Department arrived at 123 Tyler Court, a three-story apartment building in Syracuse, New York, in response to a structure fire.  Stip. Appeal App. (Docket No. 10, Ex. P) at 31.  The fire had broken out in a second floor apartment kitchen.  Id.  Apartment L, the apartment attributed to Crawford, was located on the third floor, directly above the fire-stricken apartment.  Id.  At around 2:55 p.m., firefighters knocked on Apartment L's door because they were concerned about smoke inhalation by occupants and fire and smoke damage.  Id.  When no one responded from within Apartment L, the firefighters forced the door open.  Id. at 31-32.  The firefighters entered the apartment and did a "quick check" for occupants, flames, and smoke.  Id. at 32.

Soon after the "quick check" and after an attempt to ventilate the apartment by the firefighters, Officer Tracy Greco ("Officer Greco"), a Syracuse police officer, arrived on the scene in response to the fire. Id.  While Officer Greco was at the locus of the fire, the fire department informed her that firefighters broke down Apartment L's door. Id. at 33.  Officer Greco then proceeded upstairs to Apartment L, found the door open, entered, and saw the fire department ventilating the apartment. Id.  In an open pantry on a shelf, Officer Greco saw crack cocaine in plastic bags. Id.  Officer Greco notified her superiors and obtained a search warrant. Id. at 33, 45-52.  Upon a subsequent search pursuant to a warrant, Officer Greco discovered a knife bearing cocaine residue and Crawford's fingerprints, a jacket containing crack cocaine and money, and other property with Crawford's name affixed thereto.  Crawford Appeal Br. (Docket No. 10, Ex. Q) at 5-7.

On December 3, 1998, Crawford was stopped in his automobile by a Syracuse police officer who received a call from an off-duty police officer.  Resp. (Docket No. 10) at 3.  The off-duty police officer had been following Crawford and knew Crawford was wanted for questioning with regard to the items found in Apartment L.  Id.  Upon stopping Crawford, the police arrested him and seized marijuana found in the automobile, and subsequently found cocaine during a body cavity search of Crawford.  Pet. (Docket No. 1) at Attach. 2.  The drugs seized during Crawford's arrest did not form part of the State's case against Crawford that resulted in the conviction which Crawford now challenges.  See Calendar (Docket No. 10, Ex. H) at 2.

On January 13, 1999, Crawford was indicted on three counts: criminal possession of a controlled substance in the first and third degrees and criminally using drug paraphernalia in the second degree.  See Stip. Appeal App. (Docket No. 10, Ex. P) at 8-10.  Crawford was

3

arraigned on January 14, 1999 and pleaded not guilty. Id. at 10. A pretrial suppression hearing was conducted on March 25 and 29, 1999. Crawford Appeal Br. (Docket No. 10, Ex. Q) at 8. The court denied suppression of all of the items of property seized from Apartment L. See Stip. Appeal App. (Docket No. 10, Ex. P) at 30-36. Crawford was tried jointly with Apartment L's lessee, Dashon Hines ("Hines"). Crawford Appeal Br. (Docket No. 10, Ex. Q) at 10. Hines' defense theory was that he had no dominion and control over Apartment L where the drugs and drug paraphernalia were found because he sublet the apartment to Crawford for $250 a month. See id.; Resp't Appeal Br. (Docket No. 10, Ex. R) at 17. Crawford was found guilty on all three charges contained in the indictment; Hines was found guilty on one charge. See Stip. Appeal App. (Docket No. 10, Ex. P) at 69-70.

On October 18, 1999, Crawford filed a notice of appeal with the Appellate Division, Fourth Department. Id. at 2. On October 1, 2002, the Appellate Division unanimously affirmed Crawford's conviction. People v. Crawford, 747 N.Y.S.2d 618 (4th Dep't 2002). The New York Court of Appeals denied Crawford's application for leave to appeal on November 20, 2002. People v. Crawford, 782 N.E.2d 572 (2002) (table). On November 5, 2003, Crawford's motion to vacate pursuant to N.Y. Crim. Proc. Law § 440.10 (McKinney 2005) was denied. See Docket No. 10, Ex. Y. On February 9, 2004, Crawford's motion to renew his motion to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10 was denied. See Pet. (Docket No. 1) at 4. This petition followed.

## II.  Discussion

### A.  Unlawful Search

Crawford contends in the first ground of his habeas petition that the trial court improperly admitted into evidence cocaine that was found by a police officer in Apartment L, after responding to a fire.  Pet. (Docket No. 1) at 5, Attach. 1.  Crawford also contends that the fingerprint evidence obtained during the December 3, 1998 arrest should have been suppressed as well. Respondent contends that Crawford was afforded a constitutionally sufficient procedure to seek suppression of this evidence in state court.  Resp. (Docket No. 10) at 7.  Respondent further contends that the New York state courts applied "clearly established Federal law, as determined by the Supreme Court," as required by 28 U.S.C. § 2254(d)(1) (Supp. 2004).  Resp. at 13.

No habeas relief is allowed on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial if the State provided an opportunity for a full and fair litigation of the Fourth Amendment claim.  Stone v. Powell, 428 U.S. 465, 481-82 (1976).  When a state court has rejected the petitioner's claim on the merits, a federal court considering a habeas petition must defer to the state court's rejection of the claim, and must deny the writ unless the state court adjudication (1) "was contrary to," or (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "A state-court decision is 'contrary' to clearly established federal law within the meaning of § 2254(d)(1) if it is 'diametrically different' from, 'opposite in character or nature' to, or 'mutually opposed' to the relevant Supreme Court precedent."  Henry v. Poole, 409 F.3d 48,

5

68 (2d Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000)).

The "unreasonable application" standard is less clearly defined. Henry, 409 F.3d at 68. "[T]he term 'unreasonable application' of federal law means more than simply an 'erroneous' or 'incorrect' application." Id. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. "[A]n 'objectively unreasonable' application of Supreme Court precedent falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Henry, 409 F.3d at 68 (citing Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)). It is thus established law that an "unreasonable application" of federal must be objectively unreasonable.

Crawford argued his Fourth Amendment claim during a suppression hearing. See Docket No. 10, Ex. E at 4-17. His attorney argued that Officer Greco conducted an illegal search and seizure, and, therefore, the cocaine should not be introduced into evidence. See id. The basis of Crawford's argument was that the police "had no right to enter that apartment [where Crawford allegedly resided] . . . [T]here were no exigent circumstances" and the officer, therefore, illegally entered the residence. Id. at 10. Crawford's counsel also submitted a memorandum of law in support of Crawford's position, arguing principally that "[d]ue to the fact that the fire had been extinguished, its cause determined, and a sweep done by the fire department of the defendant's apartment to check for damage and occupants, no exigent circumstances existed to justify Officer Greco's entry without a warrant thereby making her entry illegal . . . ." Stip. Appeal App. (Docket No. 10, Ex. P) at 38.

The court concluded "that there was no search in this case, but merely a seizure," and if there was a search, the actions by the fire department and police department were "administrative and/or emergency measures that were reasonable under the circumstances." Id. at 34.  Furthermore, the court concluded that the actions taken by the firefighters and Officer Greco were reasonable because:  (1) "there was an emergency and an immediate need to take steps to protect life and property," (2) Apartment L was directly above the fire-stricken apartment, and (3) Officer Greco's "conduct could technically be viewed as a police response to a burglary of an apartment where the door was left wide open." Id. at 34-35.  Once Officer Greco was lawfully inside the apartment, the cocaine was "in plain view," was "inherently incriminating," and its "discovery was inadvertent." Id. at 35.

The Appellate Division unanimously affirmed Crawford's conviction. People v. Crawford, 747 N.Y.S.2d 618 (2002).  The court concluded that "[c]ontrary to defendant's contention, the seizure of the items on the pantry shelf, which were in plain view, was proper.  The [trial] court properly determined that the police lawfully entered defendant's apartment pursuant to the emergency exception to the warrant requirement." Id. at 619.  The New York Court of Appeals denied Crawford's petition seeking leave to appeal. People v. Crawford, 782 N.E.2d 572 (2002) (table).

**1. Emergency Exception to the Warrant Requirement**

The state court's adjudication of Crawford's illegal search and seizure claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

7

See 28 U.S.C. § 2254(d)(1). It is well-established law that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Camara v. Municipal Ct., 387 U.S. 523, 528-29 (1967). It is also well-established that "[a] burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.'" Michigan v. Tyler, 436 U.S. 499, 509 (1978). Furthermore, "officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished." Id. at 510.

In Tyler, the entries into the fire-stricken building by fire officials approximately seven hours after the fire was extinguished were determined to be "no more than an actual continuation of the first [entry] . . . ." Id. at 511. In the instant case, the apartment directly below Apartment L caught on fire, creating an exigency that justified a warrantless entry into Crawford's apartment one floor above by firefighters. Because the firefighters were concerned about the spread of the fire to the neighboring apartments and threats to life and to property, it was reasonable for them to enter the neighboring apartments to assess the damage, if any, and to ventilate the apartments, under the emergency exception to the warrant requirement.

In the aftermath of a fire, it is also reasonable for the police department to secure the premises and to investigate the blaze. See United States v. Callabrass, 607 F.2d 559 (2d Cir. 1979). In Callabrass, the Second Circuit concluded that "[i]f there were exigent circumstances necessitating [a narcotics detective's] prompt arrival . . . then [his] entry was either . . . [as] in Tyler, 'no more than an actual continuation of the first (entry),' or a second

8

warrantless entry independently justified by exigent circumstances." Id. at 563 n.2 (internal citation omitted). Thus, Officer Greco's entry may be seen as a continuation of the firefighters' initial entry or as an entry independently justified by exigent circumstances – namely, securing the premises after the fire department had broken down the door to Apartment L and conducting an independent post-fire investigation.

In addition, the Supreme Court has rejected the notion, put forth by Crawford, that the exigency justifying a warrantless entry in a fire situation ends with the dousing of the last flame. See Tyler, 436 U.S. at 509-10; see also Michigan v. Clifford, 464 U.S. 287, 297 n.8 (1984) ("[W]hen fire breaks out in an apartment unit of an apartment complex, the exigency exception may allow warrantless post-fire investigations where necessary to ensure against any immediate danger of future fire hazard."). Therefore, the state court decision that Officer Greco lawfully entered Apartment L was not contrary to the emergency exception to the warrant requirement as set forth in Tyler.

### 2.  Plain View Doctrine

Once the state courts determined that Officer Greco was lawfully in Apartment L, their conclusion that the plain view doctrine justified Officer Greco's seizure of the cocaine found on a pantry shelf did not "result[ ] in a decision that was contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1).

"[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." Soldal v. Cook County, Ill.,

9

506 U.S. 56, 68 (1992).  Furthermore, "[i]t is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).  "The rationale of the plain-view doctrine is that if *contraband* is left in open view and is observed by a police officer *from a lawful vantage point*, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment – or at least no search independent of the initial intrusion that gave the officers their vantage point." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (emphasis added).  In addition, "the discovery of evidence in plain view must be inadvertent," Coolidge, 403 U.S. at 469, and the "item's incriminating character [must be] 'immediately apparent.'" Soldal, 506 U.S. at 69.

Crawford does not dispute that Officer Greco found the cocaine sitting on a pantry shelf in Apartment L, in plain view. See Pet. (Docket No. 1) at Attach. 1.  Nor does Crawford provide any evidence that the discovery of the cocaine by Officer Greco was not inadvertent. See id.  Furthermore, Crawford does not dispute that the cocaine's incriminating character was immediately apparent.[2]  Id. at 5, Attach. 1.  Therefore, once the state courts determined that Officer Greco was lawfully in Apartment L, the state courts' determination that the cocaine was lawfully seized under the plain view doctrine was not "contrary to" nor did it "involve[ ] an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1).

Thus, Crawford has had a full and fair opportunity to litigate his Fourth Amendment

---

[2] In fact, there was not just cocaine found, but "plastic baggies, money and a scale on the shelves." Crawford Appeal Br. (Docket No. 10, Ex. Q) at 4.

claim, and there was no unconscionable breakdown in the underlying process. It is, therefore, recommended that the petition be denied on this ground.

### B.  Unlawful Arrest

In ground two of his petition, Crawford contends that his conviction was obtained by the use of evidence procured pursuant to an unlawful arrest. Pet. at 5. Respondent contends that Crawford failed fully to exhaust state court remedies because this claim "has never been [properly] presented to the State court as a stand-alone item." Resp. at 1. In the alternative, respondent argues that Crawford was properly stopped and arrested, and evidence resulting therefrom was properly admitted after a constitutionally sufficient procedure. Id. at 2, 7.

### 1.  Failure to Exhaust State Court Remedies

A state prisoner must exhaust all available state court remedies before a particular habeas corpus claim may be considered by a federal court. 28 U.S.C. § 2254(b)-(c); Duckworth v. Serrano, 454 U.S. 1, 3 (1981). This requires that a petitioner "fairly present" his constitutional claim to the highest state court. Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997). Crawford's second claim was raised neither in his brief to the Appellate Division nor in his application for leave to appeal to the New York Court of Appeals. See Crawford Appeal Br. (Docket No. 10, Ex. Q); Applic. for Lv. to Appeal (Docket No. 10, Ex. U). Thus, Crawford has failed to satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).

11

While the failure to exhaust claims generally prevents a habeas court from considering those claims on the merits, an unexhausted claim is deemed exhausted when no real avenue remains open by which it could be exhausted. Castille v. Peoples, 489 U.S. 346, 351 (1989). Crawford is now procedurally barred from raising ground two to the New York Court of Appeals because a defendant is entitled to only one direct appeal. See N.Y. Ct. R. § 500.10(a) (McKinney 2004). Thus, this claim is deemed exhausted.

### 2. Cause and Prejudice

When a petitioner has procedurally defaulted on a claim, a federal court may consider such a claim under two limited circumstances only. Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). First, if the petitioner can show cause for his or her failure to comply with state procedural rules and prejudice upon the alleged violation of a federal right, the claim may be considered despite the procedural default. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Aparicio, 269 F.3d at 90. Second, if a petitioner is unable to meet the cause and prejudice exception, he or she may avoid the procedural bar only if it can be "demonstrated that failure to consider the claim would result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

The only showing of cause that Crawford has offered for failing to raise ground two to the Appellate Division and to the Court of Appeals is ineffective assistance of counsel.[3]

---

[3] Although it appears that Crawford, in his habeas petition, is attacking only the service of his attorneys *prior* to the appellate process, this Court will assume, arguendo, that when Crawford asserts that "[c]ounsel failed to challenge the legality of petioner's arrest," he is also attacking his *appellate* counsel 's failure to raise that issue on appeal.

12

See Pet. at 6. "A defense counsel's ineffectiveness in failing properly to preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." Aparicio, 269 F.3d at 91 (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)). As noted infra in subsection II(C), Crawford cannot meet this standard.

Because no cause has been demonstrated, it need not be determined whether Crawford suffered actual prejudice. See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); Pou v. Keane, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.). In addition, Crawford has not asserted any circumstances that would warrant application of the miscarriage of justice exception to this claim. This exception is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986); Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997). Given the weight of the evidence against Crawford, his claim that some of that evidence was obtained after an allegedly illegal stop and resulted in his subsequent drug conviction is insufficient to support the conclusion that this is such an "extraordinary" case. Therefore, it is recommended that the petition be denied on this ground.

### C. Ineffective Assistance of Counsel

Crawford contends in the third ground of his petition that he received ineffective assistance of counsel because his counsel: (1) failed to challenge the legality of his arrest; (2) failed to file for a trial severance from his co-defendant; (3) failed to investigate the crime scene prior to the suppression hearing; (4) made no effort to enforce by court order his right

13

to clarification of the indictment; (5) did not have any of the documents from his previous counsel, but rather relied upon the documents provided to him by the prosecution; and (6) failed to check with Crawford before waiving all post-conviction motions. Pet. at 6, Attach. 4-6. Respondent contends that Crawford received effective assistance of counsel, and, therefore, Crawford fails to meet the Strickland standard. Resp. at 14.

### 1. Trial Counsel

The Strickland test, necessitating deficient performance which actually prejudiced a petitioner's defense, requires a federal court to be "highly deferential" to counsel's performance. Strickland v. Washington, 466 U.S. 668, 689 (1984). Moreover, there is a strong presumption that counsel's conduct was reasonable and that any challenged conduct "might be considered sound trial strategy." Kiesser v. New York, 56 F.3d 16, 18 (2d Cir. 1995) (per curiam) (internal quotations omitted).

Crawford attacks the effectiveness of both his pretrial attorney and his attorney at trial and at sentencing. See Pet. at 6-7, Attach. 4-6. First, Crawford faults his trial counsel for not challenging Crawford's allegedly unlawful arrest which procured fingerprints. Id. at 6, Attach. 4. This course of action is well within sound trial strategy as is the reasonable belief that counsel's time and resources would be better devoted to other matters, such as challenging the admissibility of evidence instead of challenging the allegedly unlawful arrest. In fact, counsel may have believed that pursuing the unlawful arrest claim was no longer material because the prosecution withdrew their request to introduce the damaging evidence that Crawford possessed drugs on his person when arrested in this case during a

14

traffic stop.[4]  See Docket No. 10, Ex. H at 2.

Second, it was within counsel's professional judgment not to seek a trial severance from Crawford's co-defendant, Hines.  Counsel may have made a tactical decision in not seeking a severance in an attempt to shift ownership and responsibility for the drugs – and Apartment L – to Hines who had signed the Apartment L's lease.  In fact, Crawford did allow for the inference that Hines, and not Crawford, was the guilty one associated with Apartment L.  See Trial Vol. IV (Docket No. 10, Ex. K) at 929 (Crawford claiming that all of the clothing in Apartment L belonged to him except the jacket containing cocaine), 936 (Crawford claiming that Hines had keys to Apartment L and would let himself in), 898 (Hines admitting to Crawford's counsel that Hines threatened Crawford's life).

Third, Crawford alleges that counsel failed to enforce "the petitioner's right to clarification of the indictment as the 'Bill of Particulars' is intended to provide."  Pet. at Attach. 5.  Counsel, pursuant to the trial court's pretrial order, Stip. Appeal App. (Docket No. 10, Ex. P) at 16-26, requested a Bill of Particulars on January 25, 1999.  See Stip. Appeal App. (Docket No. 10, Ex. P) at 13-15.  The prosecution provided such a bill.  See id. at 27-28.  In answering counsel's requests for information, the prosecution omitted several responses, stating instead that those requests by counsel were not "proper request[s]" but

---

[4] During trial, counsel also discussed stipulating to evidence – a cell phone, a community college identification card, and a test booklet–from Crawford's allegedly unlawful arrest.  See Trial Vol. III (Docket No. 10, Ex. I) at 274.  Part of the purpose of counsel's stipulation was "to avoid testimony about the arrest [and] about the circumstances of the arrest . . . ."  Id.  Thus, counsel may have reasonably believed that because any damaging testimony about the allegedly unlawful arrest would be avoided and because charges for the drugs possessed by Crawford at the time of his arrest were dropped, that issue was no longer materially relevant to the drugs found within the apartment for which he was on trial.

15

were "evidentiary in nature." Id. Again, it is within counsel's professional judgment to decide which issues to pursue. Counsel may have decided that the refused information was unnecessary or not central to the case and therefore not worth pursuing. Furthermore, Crawford does not allege that any particular piece of refused information would have altered the outcome of his trial.

Crawford also faults his counsel for not investigating the crime scene and for not taking photographs of the scene. Pet. at Attach. 4-5. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Counsel's chosen course of action was within sound professional judgment. Crawford sought to prove that it was impossible for Officer Greco to have seen the cocaine from the hallway. See Pet. at Attach. 4-5. Yet, the trial court made it clear to Crawford's counsel that it did not matter whether Officer Greco viewed the drugs from the hallway or from within the apartment because Officer Greco had a lawful reason to be inside Apartment L. See Hr'g (Docket No. 10, Ex. C) at 52; Mot. (Docket No. 10, Ex. M) at 2-4.

Finally, this Court addresses Crawford's allegations that his trial and sentencing attorney failed to obtain documents from his pretrial counsel, instead relying on the prosecution's documents, and that counsel improperly waived all of Crawford's post-trial motions. See Pet. at Attach. 5-6. No resulting prejudice from these actions appears from the record here and therefore, they cannot sustain a claim for ineffective assistance of counsel. See DeJesus, 219 F.3d at 121. Trial counsel received all documents from the prosecution, with the exception of a depositional statement given by Crawford's co-

defendant, Hines.  See Trial Vol. IV (Docket No. 10, Ex. K) at 874-76.  Nevertheless, when Hines' deposition was brought up during the trial, counsel informed the court that he was not aware of Hines' prior statements and did not have a copy of the deposition.  See id. at 873-74.  The court noted that the "[depositional] transcript is a bunch of background, there's very little meat in it, I can tell you right now, but you're going to have a chance to review it and then you'll be able to recall this witness if you tell me exactly what it is you want to ask him about what's in the transcript."  Id. at 877.  Counsel responded, "That's more than fair, Judge."  Id. at 877-78.  The court then struck Hines' answer, which referred to the deposition.  Id. at 881.  As such, there was no resulting prejudice and Crawford has not alleged any specific or concrete prejudice.

Similarly, no prejudice resulted from the premature waiver of Crawford's post-trial motions.  Counsel sent the waiver letter to the trial court on July 21, 1999.  Stip. Appeal App. (Docket No. 10, Ex. P) at 71.  After this, and apparently unbeknownst to counsel, Crawford sent two post-trial pro se memoranda, which were received by the trial court, on July 15 and 28, 1999.  See id. at 84-89.  Consequently, upon learning of Crawford's intention to file a post-trial motion, counsel wrote his own notice of a motion, which was received by the court on July 28, 1999, and which incorporated all of Crawford's pro se memoranda claims.  See id. at 87-89.  Counsel's notice also asked for a fact-finding hearing and raised the issue of juror misconduct.  Id.  As such, no prejudice can be attributed to counsel's premature waiver and subsequent retraction of that waiver upon learning of Crawford's intentions.

17

## 2. Appellate Counsel

To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that: (1) appellate counsel's performance fell below an objective standard of professional reasonableness, and (2) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different, i.e., such error caused prejudice to the petitioner. Smith v. Robbins, 120 S. Ct. 746, 752 (2000); Strickland, 466 U.S. at 688. When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues on appeal while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)). A petitioner asserting "constitutionally deficient performance" must show more than counsel's failure to raise a nonfrivolous argument, as counsel is not required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments. Jones v. Barnes, 463 U.S. 741, 751-52 (1983); Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001). Moreover, "the Sixth Amendment does not require that all colorable state law arguments be raised on direct appeal." Sellan, 262 F.3d at 310.

Crawford's appellate counsel argued that the trial court erred in concluding that the emergency doctrine provided a basis for the search by Officer Greco and that Crawford was denied effective assistance of counsel. Crawford Appeal Br. (Docket No. 10, Ex. Q) at 14-34. Appellate counsel may have believed that the unlawful arrest claim or other claims would have impeded the application process, whereas the two claims she chose to pursue were more viable. Additionally, there is nothing in the record to suggest that counsel

18

omitted the unlawful arrest claim – or any other claims – while pursuing weaker claims. Rather, it appears that counsel, in using her professional judgment, pursued the stronger arguments on appeal and omitted the weaker ones.  Therefore, Crawford has failed to show that his appellate counsel's performance fell below an objective standard of reasonableness.  Furthermore, there is no indication that the Court of Appeals would have granted Crawford's application for leave to appeal if the unlawful arrest claim had been included.

It is, therefore, recommended that Crawford's petition be denied on this ground.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**; and

Pursuant to 28 U.S.C. § 636(b)(1) (Supp. 2004), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 1, 2005
      Albany, New York

*David R. Homer*
United States Magistrate Judge